DOMENICK ANTENUCCI ET AL. *v.* HARTFORD ROMAN CATHOLIC DIOCESAN CORPORATION

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 98216

Memorandum filed July 26, 1954.

*Feingold & Feingold,* of Hartford, for the plaintiffs.

*Joseph P. Cooney,* of Hartford, for the defendant.

COMLEY, J. This action was brought in three counts seeking an injunction to restrain the defendant from operating a cemetery upon certain land in the town of Bloomfield. At the trial the first count was withdrawn, leaving the second count, in which it is alleged that the proposed cemetery will constitute a nuisance in fact, and the third count, in which it is claimed that it will violate the zoning regulations of Bloomfield.

A consideration of the second count requires a brief review of facts. The town of Bloomfield adjoins the city of Hartford on the north. One of the principal highways in the town is Blue Hills Avenue, which originates in the city of Hartford, enters Bloomfield on its southerly boundary and runs thence in a northerly and northwesterly direction across Bloomfield to the town of Windsor. About 1200 feet north of the Hartford city line on the east side of Blue Hills Avenue there is located Mt. St. Benedict's Cemetery. It occupies about 127 acres of land and extends easterly into the town of Windsor. It consists of three parcels of land, the first of which was acquired by St. Patrick's Church Corporation in 1873, the second by St. Joseph's Cathedral Corporation in 1911 and the third by the defendant in 1916. Apparently the ownership of these parcels still remains in the three grantees. It is admitted that the operation and management of the cemetery is entirely in the hands of the defendant.

Mt. St. Benedict's Cemetery has been for many years the principal place of burial in the Hartford area for members of the Roman Catholic faith. It is maintained in excellent condition with attractive planting and landscaping. It has a frontage on Blue Hills Avenue of about 2250 feet. Through the years the burials have been so numerous that available space is becoming scarce and will soon be exhausted.

To provide new burial facilities, the defendant, on August 17, 1943, purchased a tract of land on the opposite or west side of Blue Hills Avenue. This tract is irregular in shape and has an area of about 83 acres. It has a frontage on the west side of Blue Hills Avenue of 850 feet. About 450 feet of this frontage is opposite the existing cemetery on the east side. For many years this tract has been operated as a farm and since 1943 the defendant has leased it for farming purposes. It has been known for many decades as the "Hubbard Farm."

The plaintiffs own properties on streets in the immediate vicinity. The plaintiff Attardo owns a two-family house at 40 Hubbard Street. The rear of his lot abuts on the defendant's land for a distance of 215 feet. The plaintiff Shampain owns a small residence at 150 Brookline Avenue and the rear of his lot abuts upon the defendant's land for its full width of 50 feet. The plaintiff Antenucci owns a large lot about 800 feet by 500 feet on Douglas Street. One side of this lot abuts on the defendant's land.

In 1953 the defendant filed a map in the office of the town clerk of Bloomfield showing the proposed development of the Hubbard farm as a cemetery. The defendant likewise made application to the building inspector for permission to use the tract for cemetery purposes and, on April 29, 1953, such a certificate of use was issued.

As noted above, Blue Hills Avenue is a main thoroughfare leading north from the city of Hartford. It is heavily traveled. For about a mile north of the city line there is a strip on either side of the highway which is zoned for business. A large outdoor movie theater is located near the Hubbard farm. Between the farm and the city line there are within the business zone numerous commercial establishments, including gas stations, an outdoor

storage yard for old cars, a furniture shop, a plumbing shop, a cabinet works, two monument yards, a branch library, a lot for pony rides, a radio transmission station, shoemaker shop, cheap eating places, etc., etc. In back of the strips zoned for business and along the side streets such as those where the plaintiffs live, the property is in an R-10 residence zone, which is the lowest class of residential zoning in the town. For the most part, the houses on these streets are of moderate or low cost.

Blue Hills Avenue is a heavily traveled highway. In the morning there are, on the average, four or five funeral processions which enter the existing cemetery. On religious holidays when it is customary to visit the graves of the dead, there is heavy traffic to and from the cemetery. In the evening, except in the winter season, there is much traffic to and from the outdoor movie theater.

About one-half to three quarters of a mile west of Blue Hills Avenue there is a highway known as Granby Street. The property on the west side of this street is zoned for industry and there are already some small manufacturing establishments in this area with the prospect of more to come. Just south of the city line in Hartford there is a very extensive low-cost housing development.

The plaintiffs concede that the proposed cemetery is not a nuisance per se. This is the established law. 66 C.J.S. 793; 10 Am. Jur. 498; Jackson, Law of Cadavers (2d Ed.) p. 209; note, 87 A.L.R. 760, 762.

They contend, however, that it will constitute a nuisance in fact, and they rely heavily on *Jack* v. *Torrant,* 136 Conn. 414, to sustain their position. That case is readily distinguishable. It involved an undertaking establishment located on North Street in the town of Litchfield. Such an establishment is

far different from a cemetery and involves many activities far more distasteful than those connected with a cemetery. But more important than that distinction is the character of the two neighborhoods involved. In that case, properties of substantial and unique worth would have been greatly diminished in value if not completely ruined for the purposes for which they were built. That will not be the effect in the present case. In fact, the court is convinced from the evidence and from a view of the premises that the whole area in the vicinity of the Hubbard farm will be far more desirable if it is devoted to a well-kept cemetery conducted by this defendant than if it is developed along the lines which have been followed in recent years in connection with most of the properties in this area. The court holds that it will not constitute a nuisance in fact.

A much more serious question arises from the plaintiffs' claim that the use of the property for cemetery purposes will violate the zoning regulations of the town of Bloomfield. The present regulations became effective on March 15, 1950. They contain no provision for the establishment of any new cemeteries within the town. This omission does not invalidate the regulations. See *Fairlawns Cemetery Assn., Inc.* v. *Zoning Commission,* 138 Conn. 434. But it does mean that no new cemetery may be established within the town unless the regulations are amended to permit it. No such amendment has ever been made to cover the defendant's proposed cemetery and apparently the defendant has never sought such an amendment. The reason for the failure of the defendant to do this is its contention that the proposed cemetery is not a new cemetery. It claims that the cemetery on the Hubbard farm will be simply an extension of the old Mt. St. Benedict's cemetery on the east side of Blue Hills Avenue. Section 3 of article 2 of the regula-

tions enumerates the uses to which property may be put in residential zones and among these permitted uses is "the extension of an existing cemetery." Therefore, so argues the defendant, since the proposed cemetery is merely an extension of the old one, it is a permitted use under the existing regulations, no application for an amendment of the regulations by the zoning authorities is necessary, and it is entitled to proceed with the development of the cemetery under the certificate of use which the building inspector had the legal power to issue.

The argument is unsound because the premise upon which it rests is unsound. The new cemetery cannot properly be regarded as an "extension" of the old. It is separated from the old by a broad public highway. It nowhere adjoins the old. It is a different and a separate tract of land. It is true that the two tracts have a common frontage on Blue Hills Avenue for a relatively short distance of 450 feet but the highway lies between them and cuts off each completely from the other.

The construction of the word "extension" claimed by the defendant is forced and contrary to the commonly accepted definition of that term. In *State* v. *Zazzaro,* 128 Conn. 160, 168, the court said: "The most common usage of the word 'extend,' especially in legal connotation, is along the line of its derivation, to stretch out." The definitions in Webster's New International Dictionary (2d Ed.) are as follows: "1. Act of extending, or state of being extended; a stretching out; enlargement in dimension, area, duration or scope; increase; augmentation; expansion. 2. A part constituting an addition or enlargement, as an annex; as, to build on an *extension* to a house."

The word "extension" connotes a subordinate or lesser part annexed to the principal or larger part and it implies a physical connection, an unbroken

continuation. As was said in *New York Cent. & H. R.R. Co.* v. *Buffalo & W. E. Ry. Co.*, 96 App. Div. 471, 475 (N.Y.). "The term 'extension' conveys to the mind an enlargement of the main body, the addition of something of less import than that to which it is attached." When used with reference to highways, an "extension" means a continuation in the same direction without a change of course. See *Seattle & M. Ry. Co.* v. *State,* 7 Wash. 150; *Mayor* v. *Ouachita Parish,* 47 La. Ann. 1061; *O. T. Johnson Corporation* v. *Los Angeles,* 198 Cal. 308.

Where there is a physical separation between two properties one cannot be regarded as an extension of the other. *Mt. Pleasant Cemetery Co.* v. *Newark,* 89 N.J.L. 255; *Chayt* v. *Board of Zoning Appeals,* 177 Md. 426; see also *First National Bank & Trust Co.* v. *Zoning Board of Appeals,* 126 Conn. 228.

In view of the foregoing, it is the conclusion of the court that the proposed cemetery cannot be regarded as an extension of the old cemetery and that the defendant may not proceed to use the Hubbard farm for cemetery purposes under the certificate issued by the building inspector.

The first count has been withdrawn. The issues under the second count are found for the defendant and judgment thereon is rendered in its favor. The issues under the third count are found for the plaintiffs and a decree thereon may issue enjoining the defendant from using for cemetery purposes the land owned by it on the west side of Blue Hills Avenue in the town of Bloomfield and conveyed to it by deed, dated August 17, 1943, from Charles H. Belknap, executor of the estate of George F. Hubbard, and recorded in the land records of said town in volume 50 at pages 507 and 508.